**Opinion filed July 22, 2021**



**In The**

# Eleventh Court of Appeals

_____

## No. 11-19-00227-CR

_____

### TAMMI DAWN DEERE, Appellant

### V.

### THE STATE OF TEXAS, Appellee

**On Appeal from the 132nd District Court**
**Scurry County, Texas**
**Trial Court Cause No. CR 10650**

## O P I N I O N

This is an appeal from Appellant's jury conviction of possession of methamphetamine. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112(b) (West 2017). The trial court assessed Appellant's punishment at two years' incarceration in the State Jail Division of the Texas Department of Criminal Justice and a fine of $1,500.

In six issues on appeal, Appellant contends that (1) the evidence was insufficient to find Appellant guilty of possession of methamphetamine, (2) the trial court erred in denying Appellant's for-cause jury challenges, (3) the trial court erred in requiring Appellant to make objections—in front of the venire panel—to jurors that her counsel would have stricken with peremptory strikes had he not had to expend them on persons for whom challenges for cause were denied, (4) the trial court erred in omitting certain instructions from the court's charge, (5) the trial court erred in overruling her optional-completeness objection and excluding the audio portion of the video of the traffic stop that led to discovery of the controlled substance, and (6) Appellant was denied due process after a prospective juror made an inflammatory comment during voir dire about past dealings with Appellant. We affirm.

*Background Facts*

Appellant was pulled over for speeding; the radar in the police officers' patrol unit showed that Appellant was driving thirty-six miles per hour in a thirty-mile-per-hour zone. Two officers approached her car, and one of them asked her for her driver's license and insurance. Appellant reached into her purse, pulled out her license, and gave it to the officer. There was no one else in the car. The officers went back to their vehicle, and after a period of time, one of the officers returned to Appellant's car and asked to search her car. Appellant agreed, placed her purse in the passenger seat, and exited the car. The officer searched Appellant's car and purse and found what appeared to be methamphetamine in a small plastic bag inside her purse. The substance was later tested and confirmed to be methamphetamine. Appellant was arrested and charged with possession of a controlled substance. This appeal followed.

2

*Analysis*

I. *Sufficiency of the Evidence*

In her first issue on appeal, Appellant contends that the evidence is insufficient to prove beyond a reasonable doubt that Appellant was guilty of possessing methamphetamine. We review a challenge to the sufficiency of the evidence under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we review all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

When conducting a sufficiency review, we consider all of the evidence admitted at trial, including pieces of evidence that may have been improperly admitted. *Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We defer to the factfinder's role as the sole judge of the witnesses' credibility and the weight their testimony is to be afforded. *Brooks*, 323 S.W.3d at 899. This standard accounts for the factfinder's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319; *Clayton*, 235 S.W.3d at 778.

It is not necessary that the evidence directly prove the defendant's guilt; circumstantial evidence is as probative as direct evidence in establishing a defendant's guilt, and circumstantial evidence can alone be sufficient to establish guilt. *Carrizales v. State*, 414 S.W.3d 737, 742 (Tex. Crim. App. 2013) (citing *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007)). Each fact need not

point directly and independently to guilt if the cumulative force of all incriminating circumstances is sufficient to support the conviction. *Hooper*, 214 S.W.3d at 13.

To establish unlawful possession of a controlled substance, the State bears the burden to prove beyond a reasonable doubt that "(1) the accused exercised control, management, or care over the controlled substance; and (2) the accused knew the matter possessed was contraband." *Poindexter v. State*, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005), *overruled in part on other grounds by Robinson v. State*, 466 S.W.3d 166, 173 & n.32 (Tex. Crim. App. 2015).

Appellant contends there was insufficient evidence to affirmatively link Appellant to the methamphetamine. Under the "affirmative links" rule, the defendant's link to the substance must have been more than a fortuitous proximity. *Evans v. State*, 202 S.W.3d 158, 161–62 (Tex. Crim. App. 2006). Appellant's reliance on the affirmative links rule, however, is misplaced. As this court stated in *Banks v. State*, the affirmative links rule "applies to instances when the accused does not have exclusive possession of the location where the contraband is discovered. Here, the State was not required to present evidence affirmatively linking Appellant to the cocaine because it was found on [her] person—a place that [s]he exclusively controlled." *Banks v. State*, No. 11-17-00281-CR, 2019 WL 3727550, at *2 (Tex. App.—Eastland Aug. 8, 2019, no pet.) (mem. op., not designated for publication) (citation omitted) (citing *Toumey v. State*, No. 01-16-00144-CR, 2017 WL 631841, at *4 (Tex. App.—Houston [1st Dist.] Feb. 16, 2017, pet. ref'd) (mem. op., not designated for publication)). Specifically, the methamphetamine was found in Appellant's own purse, which was in Appellant's exclusive control. Furthermore, Appellant was in her own car with no one else in the vehicle. Under these circumstances, the affirmative links rule does not apply. *See id.*; *cf Cameron v. State*, 703 S.W.2d 254, 255 (Tex. App.—Corpus Christi–Edinburg 1985, pet. ref'd)

4

(finding that a third party had possession and control of drugs that were found in the third party's purse).

Viewed in the light most favorable to the verdict, the above evidence is sufficient to support a finding beyond a reasonable doubt that Appellant knowingly possessed the methamphetamine that was in her exclusive possession. When the arresting officer asked Appellant for her license and registration, he saw Appellant reach into her own purse—which contained the methamphetamine—to pull out her license. From this, a reasonable trier of fact could infer that Appellant was aware that she was in possession of a controlled substance when she pulled out her license. Although Appellant's sister testified that the methamphetamine was hers and not Appellant's, she found out that Appellant had been arrested for methamphetamine the day after Appellant's arrest, but only came forward with this confession a few days before trial. The jury was in the best position to determine the credibility and demeanor of the witnesses and resolve evidentiary conflicts, and under these facts, the jury could have reasonably disbelieved Appellant's sister's testimony. *See Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008) (citing *Marshall v. State*, 210 S.W.3d 618, 625 (Tex. Crim. App. 2006)). Even assuming the sister actually placed the methamphetamine in Appellant's purse, under the light most favorable to the verdict, a rational jury could have found that Appellant subsequently realized and knowingly possessed the methamphetamine after it was placed in her purse but before the search. We overrule Appellant's first issue.

II. *Challenges for Cause*

In her second issue on appeal, Appellant contends that the trial court erred in failing to excuse certain venirepersons for cause. Of the nineteen potential jurors that Appellant challenged for cause, four were actually selected as jurors in Appellant's case. Appellant specifically asserts that the trial court erred in denying Appellant's challenges for cause against three of those jurors.

When reviewing a trial court's decision to grant or deny a challenge for cause, we look at the entire record to determine if there is sufficient evidence to support the trial court's ruling. *See Sells v. State*, 121 S.W.3d 748, 759 (Tex. Crim. App. 2003). A defendant has a constitutional right "to be tried by impartial, indifferent jurors whose verdict must be based upon the evidence developed at trial." *Howard v. State*, 941 S.W.2d 102, 117 (Tex. Crim. App. 1996), *overruled on other grounds by Easley v. State*, 424 S.W.3d 535, 538 & n.23 (Tex. Crim. App. 2014). A potential juror may be challenged for cause if he or she has a bias or prejudice in favor of or against the defendant or against the law applicable to the case. *See* TEX. CODE. CRIM. PROC. ANN. art. 35.16(a)(9), (c)(2) (West 2006); *Gardner v. State*, 306 S.W.3d 274, 295 (Tex. Crim. App. 2009). The proponent of a challenge for cause bears the initial burden of establishing that the challenge is proper. *Gardner*, 306 S.W.3d at 295. The test is whether the bias or prejudice would substantially impair the prospective juror's ability to carry out his oath and instructions in accordance with the law. *Davis v. State*, 329 S.W.3d 798, 807 (Tex. Crim. App. 2010). Because this court is only given a cold record for review, the trial court is in the best position to observe the potential juror's demeanor and responses. *Chambers v. State*, 866 S.W.2d 9, 22 (Tex. Crim. App. 1993). Accordingly, we review a trial court's decision regarding for-cause challenges for an abuse of discretion. *Davis*, 329 S.W.3d at 807; *Kemp v. State*, 846 S.W.2d 289, 301 (Tex. Crim. App. 1992).

The Texas Court of Criminal Appeals has repeatedly held that "[b]efore a prospective juror can be excused for cause on this basis, the law must be explained to him and he must be asked whether he can follow that law regardless of his personal views." *Tracy v. State*, 597 S.W.3d 502, 512 (Tex. Crim. App. 2020). Thus, a proponent of a challenge for cause "does not meet this burden until he has shown that the veniremember understood the requirements of the law and could not overcome his prejudice well enough to follow the law." *Id.*

6

Appellant's trial counsel began by asking each juror how much credibility, based on a scale of one to five, the juror would afford an officer of the law before any testimony was given, and each potential juror answered. The scale of "one to five" was only vaguely explained. Here, the record provides no indication that the potential jurors were informed by Appellant's trial counsel that they were required by law to impartially judge the credibility of the witnesses. *See Hernandez v. State*, 563 S.W.2d 947, 950 (Tex. Crim. App. 1978). Nor did Appellant's trial counsel ask the potential jurors whether they could follow that law, regardless of their personal views concerning an officer's credibility.

That some of the potential jurors answered that they would rank an officer's initial credibility as a "five" does not necessarily equate to an admission that the juror would absolutely believe the officer's testimony once it is given. Nor does it equate to the venireperson's inability to set aside preconceived notions or an admission of the venireperson's inability to follow the law. The law is concerned with whether a juror will *always* believe an officer's testimony, regardless of how it might conflict with other testimony or evidence. *See Jones v. State*, 982 S.W.2d 386, 389 (Tex. Crim. App. 1998) (citing *Hernandez*, 563 S.W.2d at 950). Therefore, Appellant failed to establish the predicate necessary to properly challenge for cause any of the jurors complained of here.

In *Hernandez*, the Court of Criminal Appeals held that bias expressed by a panelist was sufficient for the trial court to use its discretion to strike for cause, where the panelist stated that under no circumstances would she believe that a police officer would lie from the witness stand. 563 S.W.2d at 950.

> Her voir dire examination revealed she believed a police officer would always tell the truth. When considering the fact that three of the four State's witnesses were police officers, these responses become especially important. A defendant is entitled to a juror who will impartially judge the credibility of the witnesses. [The panelist's]

7

testimony revealed that her predisposition to believe police officers would have prevented her from impartially judging the credibility of those witnesses. Such responses effectively demonstrated bias against the appellant.

*Id.* at 950 (citation omitted).

Because of the significant discretion afforded to the trial court, it matters on appeal whether the claimed error is based on the trial court's sustaining or denial of a challenge for cause. While a veniremember's inclination to believe the testimony of a police officer more than other witnesses may be sufficient to justify the trial court's sustaining a challenge for cause, without more, it is not enough to compel excusal, nor is it an abuse of discretion if the trial court denies a for-cause challenge on these grounds. *See Leach v. State*, 770 S.W.2d 903, 907 (Tex. App.—Corpus Christi–Edinburg 1989, pet. ref'd) (upholding grant of State's challenge for cause where the veniremember stated he would be very skeptical of the testimony of any police officer due to son's experiences with officers). This is true even if the veniremember also asserts that he will judge the individual credibility of each witness. *See Smith v. State*, 907 S.W.2d 522, 530–31 (Tex. Crim. App. 1995) (holding a veniremember was not challengeable for cause when the veniremember stated he would give credibility to the testimony of Texas Rangers over other witnesses but would nevertheless weigh the credibility); *Lane v. State*, 822 S.W.2d 35, 44 (Tex. Crim. App. 1991); *Harris v. State*, 784 S.W.2d 5, 21 (Tex. Crim. App. 1989); *Montoya v. State*, 810 S.W.2d 160, 170 (Tex. Crim. App. 1989); *see also Zakkizadeh v. State*, 920 S.W.2d 337 (Tex. App.—Houston [1st Dist.] 1995, no pet.) (denial of challenge for cause upheld where veniremember who was a police officer initially said he would be more likely to believe a fellow officer but later said it would depend on the testimony); *Laca v. State*, 893 S.W.2d 171, 182–83 (Tex. App.—El Paso 1995, pet. ref'd) (holding a veniremember was not challengeable for

cause when the veniremember stated he would give greater credibility to an officer regarding an officer's training and expertise).

Appellant failed to establish the predicate necessary to properly challenge for cause any of the jurors complained of here. We cannot hold that the trial court abused its discretion in denying Appellant's for-cause challenges. We overrule Appellant's second issue.

III. *Manner of Objections to the Jurors*

In her third issue on appeal, Appellant contends that the trial court erred in denying Appellant's trial counsel's request to object to the inclusion of certain jurors outside of the panel's presence. Appellant asserts that the trial court's decision denying her counsel the right to make objections to the jurors outside of their hearing caused Appellant's trial counsel to "alienat[e] the objectionable jurors and prejudic[e] them against Appellant by Appellant's desire to remove them as biased." Appellant contends that this resulted in a constitutionally insufficient procedure and a violation of her constitutional right to an impartial jury.

A criminal defendant has a constitutional right to trial by an impartial jury. U.S. CONST. amend. VI; TEX. CONST. art. 1, § 10. This right is also a fundamental requirement of due process. *See* U.S. CONST. amend. XIV; *Morgan v. Illinois*, 504 U.S. 719, 727 (1992) (citing *Irvin v. Dowd*, 366 U.S. 717, 721–22 (1961)). The conduct of the voir dire examination rests largely within the sound discretion of the trial court. *McGee v. State*, 923 S.W.2d 605, 607 (Tex. Crim. App. 1995); *Weaver v. State*, 476 S.W.2d 326, 327 (Tex. Crim. App. 1972) (citing *Grizzell v. State*, 298 S.W.2d 816 (Tex. Crim. App. 1956)).

Generally, in order to demonstrate harm from the denial of challenges for cause, the record must show that Appellant (1) made a clear and specific challenge for cause against a venireperson, (2) used a preemptory challenge on the complained of venireperson, (3) exhausted all remaining preemptory challenges, (4) requested

and was denied additional strikes, and (5) identified on the record the objectionable venireperson whom he would have removed with the additional strike but who remains on the juror list and then actually sits on the jury. *See Nava v. State*, 415 S.W.3d 289, 305 (Tex. Crim. App. 2013); *see also Hudson v. State*, 620 S.W.3d 726, 729–30 (Tex. Crim. App. 2021) (this issue is properly one of harm, often confused with preservation of error (citing *Johnson v. State*, 43 S.W.3d 1, 5 n.6 (Tex. Crim. App. 2001))).

We acknowledge that this procedure is complicated and fraught with stumbling blocks for any practitioner in the throes of trial and faced with the difficult tasks of keeping up with juror names, numbers, and responses to voir dire questions and contemplating follow-up questions while weighing which panelists upon whom to exercise peremptory strikes. Appellant's counsel nevertheless endeavored to follow the proper procedure by timely making his challenges for cause, using his preemptory strikes, and requesting additional strikes, which were subsequently denied. *See generally Nava*, 415 S.W.3d at 305. Appellant also objected to the panel, once seated but not yet sworn, and specifically identified five of the twelve jurors as those that he would have struck had additional peremptory strikes been allowed. During a bench conference before the names of the selected jurors were announced, Appellant's counsel explained to the court five separate times on the record that he would like to object to the panel and to the specific panelists outside the hearing of the panel. He also explained that to do otherwise would unduly prejudice his client. Once the proposed jury was seated but not sworn, counsel for Appellant again asked to make his objections to preserve error outside the presence of the jury. He explained that his client's rights to a fair trial, due process, effective assistance of counsel, and fundamental due process would be violated and that those rights guaranteed by the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution would be unduly prejudiced. When all of his attempts to make

his objections outside of the venire panel and to specific panel members were overruled, as he had previously advised the trial court, counsel then felt compelled to make his objections in front of the jury as the trial court demanded. Counsel for Appellant followed with a motion for mistrial in front of the jury, which was also overruled. Despite his efforts, Appellant's attorney only objected to the veniremembers after they had been seated. The proper procedure, however, is for the defendant—after exhausting his peremptory strikes and requesting additional strikes, which were denied—to identify one or more panelists that are objectionable, and the defendant must do so before knowing who the other party struck and before knowing who will sit on the jury. *See Nava*, 415 S.W.3d at 305. The rationale behind this is that the objectionable panelists might be struck by the other party or might be so far down the list that the panelists could not have been picked for the jury. *See Comeaux v. State*, 445 S.W.3d 745, 751 (Tex. Crim. App. 2014); *Lored v. State*, 159 S.W.3d 920, 923 (Tex. Crim. App. 2004) (a party must show that it made the trial court aware of that complaint "at a time and in a manner so that it can be corrected"). The attorneys turn in their peremptory strike lists and notify the court of the specific objectionable prospective jurors remaining before knowing who will end up actually being seated as jurors in the box. *See Comeaux*, 445 S.W.3d at 751. This prevents a party from belatedly conforming its claimed objections to the jurors actually seated. *See id.*

Regardless of whether Appellant's counsel perfectly adhered to the procedure set forth in *Nava*, we cannot merely conclude *ipso facto* that all of the events complained of by Appellant thereafter could not then be error. There are many times when trial counsel, *on the chance* that the trial court's rulings were erroneous, must nevertheless strive to preserve for appeal by objection those perceived errors. Therefore, the question remains: Did the trial court err in requiring Appellant to exercise her right to object to the panel and five of the twelve ultimate jury members

in open court and within the hearing of those jurors?  We conclude that, under these facts, the trial court did not abuse its discretion.

Although the parameters of this issue are unclear under Texas caselaw, Texas courts have held in the past that a trial court does not abuse its discretion by refusing counsel permission to approach the bench to make a challenge for cause or objection thereto.  *See, e.g.*, *Camacho v. State*, 864 S.W.2d 524, 531 (Tex. Crim. App. 1993); *Sinegal v. State*, 712 S.W.2d 605, 606 (Tex. App.—Beaumont 1986, pet. ref'd) (generally overruling an issue that stated "[t]he court erred in not letting Appellant's attorney approach the bench in order to challenge for cause Juror No. 1 . . . and on the improper comment by the judge on the right of a defendant in not taking the stand").  In *Camacho*, the Texas Court of Criminal Appeals was confronted with a similar issue to the one currently before this court and briefly held:

> Appellant is, however, unable to inform this Court of any authority which sustains his assertion that the trial court erred by keeping the challenged juror present when a challenge for cause was made.
>
> We have held that the conduct of voir dire is a matter confided to the sound discretion of the trial court.  The record in the case at bar reveals no abuse of discretion.  Point of error number eleven is overruled.

*Camacho*, 864 S.W.2d at 531 (citations omitted).  Beyond this, we find only persuasive authority that directly addresses the question of whether and when a trial court may abuse its discretion by refusing to allow a party to make their challenges to venirepersons outside the presence of the panel.  *See People v. Flockhart*, 304 P.3d 227, 236–37 n.8 (Colo. 2013) (rejecting the ABA's per se rule that all challenges should be made outside the presence of the jury and stating that "although the better practice is that espoused by the ABA, we hold that a trial court retains

discretion to conduct challenges for cause in open court. If the trial court employs this practice, it must proceed with caution").[1]

We liken the facts at hand to that of a party being required to make her challenges for cause in front of and within the hearing of the venirepersons that the party is moving to strike. Here, the trial court offered no justification as to why Appellant's trial counsel's request to approach the bench to make the objection could not be accommodated. Where a trial court forces counsel to make objections in front of the jury, the trial court creates a substantial risk that the jurors to which counsel objects will harbor a bias against counsel's client for openly challenging their ability to remain fair and impartial. Without clear reason to require objections to venirepersons to be made in their presence, we firmly believe the better practice is that trial courts should refrain from such conduct. *See id.*

Notwithstanding, we reject the use of a per se rule when determining if a trial court abuses its discretion by refusing to allow counsel to make his objections outside of the jury's presence. While the trial court could have allowed objections outside of the hearing of the seated jury, any potential harm was self-inflicted since the procedure in *Nava* was not precisely followed. While other fact scenarios might well rise to the level of reversible harm, this one does not. Just as the court held in *Camacho*, Appellant provides no authority that supports her assertion that the trial court erred in refusing to permit her objection to be made outside the presence of the jury, and under these facts, we cannot hold that the trial court's conduct constituted an abuse of discretion. *See Camacho*, 864 S.W.2d at 531.

_____

[1]The court compared *Wagner v. State*, 646 S.E.2d 676, 679 (Ga. 2007) (finding no reversible error in the trial court's order denying a request "to have all challenges for cause heard outside the jurors' presence"), and *State v. Hardin*, 498 N.W.2d 677, 681 (Iowa 1993) (reviewing trial court's decision to conduct challenges for cause in open court for an abuse of discretion), and *State v. Biegenwald*, 524 A.2d 130, 136 (N.J. 1987) (same), with *Brooks v. Commonwealth*, 484 S.E.2d 127, 130 (Va. Ct. App. 1997) (concluding that counsel should be afforded the opportunity to make and to argue challenges for cause outside the prospective jurors' presence to avoid "the possibility of bias in the mind of the juror against the defendant, where bias may not have previously existed").

13

Appellant also asserts that the trial court's decision violated Rule 104(c)(3) of the Texas Rules of Evidence, which states that the trial court is to conduct any hearing on a preliminary question outside the hearing of a jury if justice so requires. TEX. R. EVID. 104(c)(3). However, Rule 104(c) plainly applies only to preliminary questions about "whether a witness is qualified, a privilege exists, or evidence is admissible." *Id.* R. 104(a). Because Appellant was not making a preliminary objection concerning any piece of evidence, this evidentiary rule does not apply. *See id.* We overrule Appellant's third issue.

IV. *Jury-Charge Error*

In her fourth issue on appeal, Appellant contends that the trial court erred in failing to include in the jury charge an extraneous offense instruction and an Article 38.23 instruction, *see* CRIM. PROC. art. 38.23 (West 2018).

"[A]ll alleged jury-charge error must be considered on appellate review regardless of preservation in the trial court." *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012). In reviewing a jury charge, we first determine whether error occurred. *Id.* If no error occurred, our analysis ends. *Id.* If error occurred and was the subject of a timely objection in the trial court,

> then reversal is required if the error is "calculated to injure the rights of defendant," which means no more than that there must be *some* harm to the accused from the error. In other words, an error which has been properly preserved by objection will call for reversal as long as the error is not harmless.

*Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985); *see also Hardeman v. State*, 556 S.W.3d 916, 923 (Tex. App.—Eastland 2018, pet. ref'd) ("Under *Almanza*, when jury-charge error has been preserved, as it was in this case, we will reverse if the error in the court's charge resulted in some harm to the accused." (citing *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005))). Conversely, if error occurred but was not timely objected to, a defendant "will obtain

a reversal only if the error is so egregious and created such harm that the defendant 'has not had a fair and impartial trial'—in short 'egregious harm.'" *Almanza*, 686 S.W.2d at 171. In all cases, "the actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." *Id.*

Appellant first contends that the trial court erred in denying Appellant's request to include an extraneous offense limiting instruction in the jury charge. Appellant requested that an extraneous offense instruction be included in the jury charge as a result of venireperson Swinney's comments made during voir dire:

[THE PROSECUTOR]: What do you have to say about that, Mr. Swinney?

[SWINNEY]: Well, should I say it out in front of everybody?

[THE PROSECUTOR]: It's up to you. Both sides are entitled to hear what you got to say.

[SWINNEY]: Well, I know this particular person.

[THE PROSECUTOR]: Okay.

[SWINNEY]: And it's not good what I know about her.

[THE PROSECUTOR]: Okay. Let me ask you this question then. . . . So you know the Defendant?

[SWINNEY]: I know of her. I don't know her that well, but I drive a propane truck and I deliver gas to people.

[THE PROSECUTOR]: All right.

[SWINNEY]: Well, I delivered gas to her years ago and she never paid her bill.

[DEFENSE COUNSEL]: May we approach, Judge?

THE COURT: You may.

15

The parties then held a bench conference off the record. The trial court later acknowledged that Appellant's trial counsel timely objected to the juror's comments during the bench conference. After the bench conference, the prosecutor continued:

> [THE PROSECUTOR]: Without going into details about specific things that you might know about the Defendant, have you formed an opinion -- before hearing any evidence in this case, have you formed an opinion as to whether or not the Defendant is guilty or not guilty?
>
> [SWINNEY]: Well, from her past --
>
> [THE PROSECUTOR]: Without going into certain details, I appreciate that you want to explain, but just that simple question, have you formed an opinion already before you hear any evidence in the case?
>
> [SWINNEY]: To a point. I'm just being honest with you.
>
> [THE PROSECUTOR]: Yes, sir. And I want you to be.
>
> [SWINNEY]: Things that I know. It's not good. Okay.
>
> [THE PROSECUTOR]: Would you be able --
>
> [SWINNEY]: This has been going on -- this is not just recent.[2]

Generally, "a defendant is entitled to limiting instructions on the use of extraneous offenses during the guilt phase only if he timely requests those instructions when the evidence is first introduced." *Delgado v. State*, 235 S.W.3d 244, 253 (Tex. Crim. App. 2007). Here, not only does Appellant concede that she failed to request a limiting instruction at the time the comments were made, no extraneous offenses were ever introduced into evidence. Statements made during voir dire examination are not evidence. *Adams v. State*, 418 S.W.3d 803, 811 (Tex. App.—Texarkana 2013, pet. ref'd). Additionally, there is no indication that the jury

---

[2]The trial court subsequently granted Appellant's challenge for cause against Swinney.

16

improperly considered Swinney's statements regarding Appellant not having paid a past gas bill to be related, in any way, to determining Appellant's guilt in the case before it. For these reasons, we conclude that the trial court did not err in denying Appellant's request for a limiting instruction on extraneous offenses.

Appellant also contends that she was entitled to an Article 38.23 instruction. *See* CRIM. PROC. art. 38.23 (authorizing trial courts to instruct juries to disregard evidence that was illegally seized). She asserts that the audio portion accompanying the video of Appellant's arrest—which she contends in her fifth issue should have been admitted into evidence—contained statements by the officers that could have been interpreted as requiring an Article 38.23 instruction and, therefore, that the trial court erred in not including such an instruction. We disagree.

The record reflects that Appellant requested that the trial court include an Article 38.23 instruction in the jury charge. However, such an instruction is proper only when there are "disputed issues of fact that are material to [her] claim of a constitutional or statutory violation that would render evidence inadmissible." *Madden v. State*, 242 S.W.3d 504, 509–10 (Tex. Crim. App. 2007). Generally, a fact issue as to whether evidence was legally obtained may be raised "from any source, and the evidence may be strong, weak, contradicted, unimpeached, or unbelievable." *Garza v. State*, 126 S.W.3d 79, 85 (Tex. Crim. App. 2004) (quoting *Wilkerson v. State*, 933 S.W.2d 276, 280 (Tex. App.—Houston [1st Dist.] 1996, pet. ref'd)). However, if no material fact issue is raised by the evidence, then the trial court does not err in refusing to charge the jury. *See id.*

Appellant contends that the audio which accompanied the video evidence included certain statements made by the officers that "could be interpreted to at least raise a fact issue concerning the motivation for the stop, which could ultimately lead to an evidentiary issue." However, it is well settled that, when an officer makes a valid traffic stop, the existence of another motive for the stop is irrelevant. *See*

17

*Villareal v. State*, 116 S.W.3d 74 (Tex. App—Houston [14th Dist.] 2001, no pet.). Even if we assume that the officers' comments did in fact reveal alternative motivations for the stop, it is undisputed that Appellant was pulled over for traveling thirty-six miles per hour in a thirty-mile-per-hour zone. Therefore, the officers had a valid reason to stop Appellant and any alternative motivations the officers may have had are irrelevant. No material issue of fact existed that would have warranted an Article 38.23 instruction. For these reasons, the trial court did not err in refusing Appellant's request for an instruction under Article 38.23. We overrule Appellant's fourth issue.

## V. *Admission of Evidence*

In her fifth issue on appeal, Appellant contends that the trial court erred under the rule of optional completeness when it admitted into evidence the officers' dashcam video. The video exhibit as offered by the State depicted the stop and subsequent arrest, but it did not include audio because the officers' discussions during the video referenced extraneous offenses allegedly committed by Appellant. Appellant suggested, however, that "some of the audio needs to be heard by the jury," and trial counsel had created a redaction list for that purpose.

A trial court's decision to admit or exclude evidence is reviewed under an abuse of discretion standard. *Shuffield v. State*, 189 S.W.3d 782, 793 (Tex. Crim. App. 2006). A trial court abuses its discretion when it acts outside the zone of reasonable disagreement. *Zuliani v. State*, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003). We will uphold the trial court's ruling on the admission or exclusion of evidence if the ruling was proper under any legal theory or basis applicable to the case. *Martinez v. State*, 91 S.W.3d 331, 336 (Tex. Crim. App. 2002).

The rule of optional completeness provides: "If a party introduces part of an act, declaration, conversation, writing, or recorded statement, an adverse party may inquire into any other part on the same subject. An adverse party may also introduce

any other act, declaration, conversation, writing, or recorded statement that is necessary to explain or allow the trier of fact to fully understand the part offered by the opponent." TEX. R. EVID. 107.

During trial, the trial court admitted the video but excluded the entire accompanying audio portion, stating:

> The Court examined the proposed video before any testimony was offered, and finding no reason to suggest especially in light of the testimony that followed, that is, that the officers made a stop based upon a speeding violation and conducted a search based upon consent to search, there is no -- there is nothing to suppress.

Here, Appellant fails to demonstrate that the audio portion of the video was actually necessary to fully understanding or explaining the matter. Appellant asserts that the audio was necessary to fully understand the matter of whether she consented to the search. However, the record before us is devoid of any evidence indicating that portions of the audio would support Appellant's contention. Appellant did not make an offer of proof, nor did she request that the audio be included as a court exhibit only—so that it would be available for review on appeal. Accordingly, we cannot hold that the trial court abused its discretion when it admitted the video into evidence without the accompanying audio. Even though Appellant offered a list of suggested redactions to the audio portion of the evidence, the trial court was within its discretion to determine that the omitted audio did not contain any relevant information that would raise an issue of material fact. We overrule Appellant's fifth issue.

### VI. *Juror's Prejudicial Comment*

In her sixth issue on appeal, Appellant contends that she was denied due process when the trial court failed to grant a mistrial after venireperson Swinney made an allegedly improper comment during voir dire. Appellant contends that Swinney's comments, which we discussed in Appellant's fourth issue, irreparably

prejudiced the jury against Appellant and resulted in a deprivation of her constitutional right to a fair trial. We disagree.

We review a court's denial of a motion for mistrial for an abuse of discretion. *Simpson v. State*, 119 S.W.3d 262, 272 (Tex. Crim. App. 2003).

> When a potential juror makes a possibly prejudicial statement in front of the entire panel, the appellant must show harm by demonstrating that (1) other members of the panel heard the remark, (2) potential jurors who heard the remark were influenced to the prejudice of the appellant, and (3) the juror in question or some other juror who may have had a similar opinion was forced upon the appellant.

*Walker v. State*, 469 S.W.3d 204, 208 (Tex. App.—Tyler 2015, pet. ref'd) (citing *Callins v. State*, 780 S.W.2d 176, 188 (Tex. Crim. App. 1989)); *see also Alvarado v. State*, No. 11-18-00198-CR, 2020 WL 3470464, at *3 (Tex. App.—Eastland June 25, 2020, pet. ref'd) (mem op., not designated for publication) (applying the same test to show harm based on the trial court's denial of a motion for mistrial). Absent these three elements, no error will be found. *See Walker*, 469 S.W.3d at 208.

An impartial jury is defined as one that does not favor a party or an individual because of the emotions of the human mind, heart, or affections. *See Durrough v. State*, 562 S.W.2d 488, 489–90 (Tex. Crim. App. 1978); *Russell v. State*, 146 S.W.3d 705, 710 (Tex. App.—Texarkana 2004, no pet.). This means that the defendant, the cause, and the issues involved in the cause must not be prejudiced. *Durrough*, 562 S.W.2d at 490; *Russell*, 146 S.W.3d at 710. Mere juror exposure to information about a defendant's prior convictions or news accounts of the crime does not, by itself, raise a presumption the defendant was deprived of due process and cannot receive a fair trial by an impartial jury. *Murphy v. Florida*, 421 U.S. 794, 799 (1975). Jurors do not have to be totally ignorant of the facts and issues of a particular case. *Russell*, 146 S.W.3d at 710.

In *McGee v. State*, the defendant claimed that he was harmed by the trial court's failure to dismiss the entire venire panel after a member of the panel responded to questioning during voir dire about whether she felt that it would be difficult to find the defendant guilty and assess her punishment. 923 S.W.2d at 607. The venireperson remarked: "It's other things that have happened, and I wouldn't want to be—I don't know whether I could—I can say put the past behind me and go on with it. With that, it's personal; and so that's the reason I wouldn't want to be on the jury." *Id.* When questioned further about Appellant, the venireperson claimed, "I know of prior convictions." *Id.*

Here, as in *McGee*, "we infer from the record that other members of the venire heard the remark, even though [A]ppellant did not question the other members of the venire to determine whether they in fact heard it." *Id.* at 607–08. Unlike the statements made in front of the panel in *McGee*, Swinney's comments regarding Appellant did not overtly allege a crime; rather, they referred to a claim that Appellant did not, in the past, pay a gas bill. *See id.* Contrary to Appellant's assertion, within the record Swinney made no insinuation about "Appellant's involvement in narcotics." Even if Swinney's comments could be interpreted as alleging a crime relevant to the offense, there is no evidence in the record that those who heard the comment were influenced by it. In fact, there is nothing in the record to indicate that the other venirepersons were questioned about it, nor was there any mention of Swinney's comments.

Furthermore, there is nothing in the record to show that Appellant was forced to accept a juror who was actually prejudicially influenced by Swinney's voir dire comments. *See Callins*, 780 S.W.2d at 188. Just as the court concluded that McGee failed to establish harm, we conclude that the record before us does not show that Appellant was harmed by Swinney's remarks. *See McGee*, 923 S.W.2d at 607. Appellant has not established that members of the jury panel that may have heard

21

the comments of Swinney were influenced by those comments to the prejudice of Appellant or that such members were forced upon Appellant. We overrule Appellant's sixth issue.

*This Court's Ruling*

We affirm the judgment of the trial court.


W. BRUCE WILLIAMS

JUSTICE


July 22, 2021

Publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.